**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THERESA BLACK, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

               Plaintiff,

        vs.

FALCONSTOR SOFTWARE, INC.,
REIJANE HUAI, WAYNE LAM and JAMES
WEBER,

           Defendants.
------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ OCT 08 2010 ★
BROOKLYN OFFICE

# CV 10-4632

CASE No.:

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

WEXLER, J

WALL, M.J

     Plaintiff, Theresa Black, individually and on behalf of all other persons similarly situated, by

her undersigned attorneys, for her complaint against Defendants, alleges the following based upon

personal knowledge as to herself and her own acts, and information and belief as to all other matters,

based upon, *inter alia*, the investigation conducted by and through her attorneys, which included,

among other things, a review of the Defendants' public documents, conference calls and

announcements made by Defendants, United States Securities and Exchange Commission ("SEC")

filings, wire and press releases published by and regarding FalconStor Software, Inc. ("FalconStor"

1

or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of FalconStor between February 5, 2009 and September 29, 2010 (the "Class Period"), inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

2

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff Theresa Black, as set forth in the accompanying certification, incorporated by reference herein, purchased FalconStor common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant FalconStor, a Delaware Corporation, develops, manufactures, and sells network storage software solutions in the United States, and internationally. It also provides related maintenance, implementation, and engineering services. During the Class Period the Company's stock was listed on the NASDAQ under ticker "FALC."

8.      Defendant ReiJane Huai ("Huai") was, at all relevant times, Chairman, Chief Executive Officer and President of FalconStor.

9.      Defendant Wayne Lam ("Lam") is the Company's Co-Founder and was, at all relevant times, Vice President of FalconStor.

10.     Defendant James Weber ("Weber") was, at all relevant times, Chief Financial Officer, Principal Accounting Officer, Vice President and Treasurer of FalconStor.

11.     Huai, Lam, and Weber are collectively referred to hereinafter as the "Individual Defendants."

12.     During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of FalconStor and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections

3

with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

14.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the disclosure of the false, misleading, and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein is the result of collective actions of the narrowly defined group of Defendants identified above. Each of the above officers and directors of FalconStor and its subsidiaries and affiliates, by virtue of his position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein,

4

were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

15.    As officers, directors, and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and that were traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with FalconStor, each of the Individual Defendants had access to the adverse undisclosed information about FalconStor's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about FalconStor and its business issued or adopted by the Company materially false and misleading.

5

17.     The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

18.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of FalconStor securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding FalconStor's business, operations, management and the intrinsic value of FalconStor stock; and (ii) caused Plaintiff and other members of the Class to purchase FalconStor securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of FalconStor during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

6

20.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FalconStor's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by FalconStor or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of FalconStor; and

(c) to what extent the members of the Class have sustained damages, and the proper measure of damages.

7

24.   A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to redress individually the wrongs

done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

25.   The Class Period begins on February 5, 2009. On that date, FalconStor issued a press

release announcing its financial results for the fourth quarter and year end of 2008, the period ended

December 31, 2008. For the quarter, the Company reported revenues $23.4 million and GAAP net

income of $0.6 million, or $0.01 per diluted share. Defendant Huai, commenting on the results,

stated, in pertinent part, as follows:

> The difficult economic environment hurt our results for 2008. But we still believe we are
> well positioned for long term success both financially, as demonstrated by our increase in
> cash flows from operations and with our product portfolio. To cope with the challenging
> economy and constrained budgets, corporate IT must deliver extraordinary management and
> operating efficiency – creating an ideal opportunity for FalconStor's TOTALLY Open Data
> Protection solutions. Validated by elite Fortune 100 accounts and endorsed by strategic OEM
> partners, FalconStor solutions will continue to expand in key growth segments of the storage
> market -- Virtualization, CDP/replication, VTL, and file deduplication -- by leveraging our
> unique product synergy and offering tangible business value that enriches customers'
> revenues and bottom line.

26.   With regard to the Company's outlook for the year ending December 31, 2009, the

press release stated, in pertinent part, as follows:

> For the year ending December 31, 2009, the Company anticipates:
>
> • Revenues to be in the range of $96 million to $100 million
>
> • Non-GAAP net income to be between $0.18 and $0.21 per diluted share,
> which excludes stock-based compensation, net of income taxes.

8

27.     In reaction to the Company's fourth quarter and year end financial results, on February 6, 2009, shares of the Company's stock rose $0.40 per share, or 12%, to close at $3.77 per share.

28.     On April 28, 2009, FalconStor issued a press release announcing its financial results for the first quarter of 2009, the period ended March 31, 2009. For the quarter, the Company reported revenues of $21.0 million and a GAAP net loss of $0.9 million, or $0.02 per share. Moreover, the Company confirmed its guidance for the year ending December 31, 2009. Defendant Huai, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

> We are pleased that we are on track to achieve our full-year target even in this difficult macroeconomic environment. We are confident that our continued investment in development, marketing, sales, and support will enable us to expand our market share and to leapfrog the competition. As a result, we have continued to hire, knowing that it may impact our earnings in the short-term, but we believe it will foster the long-term growth of the company. Even with these investments, we are pleased that we had a non-GAAP profit for the quarter and that we continued to generate positive cash flows from operations.

29.     In reaction to the Company's 2009 first quarter earnings announcement and confirmed guidance for 2009, on April 29, 2009, shares of the Company's stock rose $0.36 per share, or 10%, to close at $3.83 per share.

30.     On July 28, 2009, FalconStor issued a press release announcing its financial results for the second quarter of 2009, the period ended June 30, 2009. For the quarter, the Company reported revenues of $24.5 million and GAAP net income of $1.3 million, or $0.03 per diluted share. Moreover, the Company once again confirmed its guidance for the year ending December 31, 2009. Defendant Huai, commenting on the results and the Company's outlook, stated, in pertinent part, as follows:

We are pleased with the performance of our business from operational, financial and strategic perspectives. Our ongoing investment in R&D and our pro-active expansion of field sales and support capacity enable our channel partners to deliver TOTALLY Open storage virtualization, continuous data protection, and deduplication solutions with compelling business advantages. Our continued growth should encourage more industry partners to leverage our state-of-the-art software to enhance their network storage solutions supported by our global support infrastructure."

31.     On October 28, 2009, FalconStor issued a press release announcing its financial results for the third quarter of 2009, the period ended September 30, 2009. For the quarter, the Company reported revenues of $21.5 million and a GAAP net loss of $2.0 million, or $0.05 per share. Defendant Huai, commenting on the results, stated, in pertinent part, as follows:

The increasing level of field activities with industry and channel partners is a recognition of our ability to reduce operating costs for our customers and to optimize business continuity with Totally Open data protection solutions. We will continue to invest in sales, marketing and support infrastructure to bolster our brand and to accelerate business momentum through the channel.

32.     The above statements were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded them:

(a)     that the Company was experiencing weak demand for its products and services;

(b)     that the Company was making improper payments to secure a contract with at least one of the Company's customers; and

(c)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

33.     On January 14, 2010, the Company issued a press release announcing its preliminary financial results for the fourth quarter and year end of 2009, the period ended December 31, 2009.

10

For the quarter, the Company anticipated "fourth quarter revenue to be in the range of $21.5 to $22.0 million, and non-GAAP net loss per share to be between $0.02 and $0.03 per share" – far below the range the Company told investors on February 5, April 28 and July 28, 2009. With regard to the Company's reason for the revenue miss, the press release stated, in pertinent part, as follows:

> The revenue shortfall in 2009 was mainly the result of lower than expected software license revenue from OEMs. On a year over year basis, gross software license revenue from OEMs decreased by approximately 24%, or $6.7 million. Three OEMs were responsible for most of this shortfall. During the fourth quarter of 2009, Hewlett Packard announced it was acquiring 3Com, the parent of H3C, one of the Company's OEMs. The change of ownership caused a change in H3C's historical licensing practices that resulted in revenue from H3C that was over $2 million lower in Q4 on a year over year basis. The ongoing delay of the proposed merger of Sun Microsystems, another of the Company's OEMs, into Oracle, resulted in a shortfall in projected revenue from Sun. Revenues from EMC, our largest customer, were also below our expectations.

Defendant Huai, commenting on the disappointing results, stated, in pertinent part, as follows:

> Although we were disappointed with the revenue shortfall from our OEMs, we were pleased in the growth of our non-OEM business. We have begun to see the positive results of our investments in nurturing the non-OEM business. In 2009, our non-OEM gross software license revenue increased 15% year over year. We expect continuing growth of our non-OEM business into 2010 and beyond by leveraging our competitive product portfolio, credible end-user references and committed channel partners on the worldwide basis.

34.    In reaction to the Company's preliminary 2009 fourth quarter and year end earnings announcement, on January 15, 2010, shares of the Company's stock fell $0.80 per share, or 18%, to close at $3.69 per share. Defendants, however, continued to conceal the true scope and extent of FalconStor's problems.

35.    On February 4, 2010, FalconStor issued a press release announcing its results for the fourth quarter and year end of 2009, the period ended December 31, 2009. For the quarter, the Company reported revenues of $22.4 million and a GAAP net loss of $1.5 million, or $0.03 per basic share. Defendant Huai, commenting on the results, stated, in pertinent part, as follows:

11

> Though revenues for fiscal year 2009 fell short of projections, our revenues continued to grow in one of the slowest economies in decades. Our investment in global non-OEM channels has produced 15 percent annual software revenue growth by enabling our partners to deliver storage virtualization, deduplication and continuous data protection solutions with compelling price/performance ratio and profit margins. We are confident in our ability to accelerate sales and earnings growth by leveraging the channel momentum, strategic alliances, product innovations and credible enterprise references.

With regard to the Company's outlook, Jim McNiel, Chief Strategy Officer of FalconStor, stated, in pertinent part, as follows:

> FalconStor is well positioned to deliver a comprehensive suite of data protection solutions. The careful packaging and positioning of these technically advanced offerings will help to move FalconStor firmly into the $10 billion storage management market.

36. Upon these announcements, shares of the Company's stock fell $0.32 per share, or 9%, to close at $3.07 per share.

37. On April 19, 2010, FalconStor issued a press release announcing its preliminary results for the first quarter of 2010, the period ended March 31, 2010. For the quarter, the Company expected revenue to be in the range of $16.8 to $17.1 million and non-GAAP net loss per share to be between $0.08 and $0.09 per share. The Company blamed the "revenue shortfall" on "lower than expected software license revenue," especially internationally. Defendant Huai, commenting on the preliminary results, stated, in pertinent part, as follows:

> Although our results were lower than we anticipated, we are still experiencing a strong pipeline and interest for our innovative solutions which offer a compelling price/performance ratio. In response to the revenue shortfall in the first quarter, we have delayed any additional hiring until we return to year over year revenue growth and we are evaluating other cost saving initiatives. We will not be giving any guidance for the year until our channel business reaches a steady predictable state.

38. Upon these announcements, shares of the Company's stock fell $0.14 per share, or 4%, to close at $3.12 per share.

12

39.     On April 28, 2010, FalconStor issued a press release announcing its results for the

first quarter of 2010, the period ended March 31, 2010. For the quarter, the Company reported

revenues of $17.1 million and a GAAP net loss of $5.5 million, or $0.12 per share. Defendant Huai,

commenting on the results, stated, in pertinent part, as follows:

> Besides expense containment/reduction, we are also focusing on capturing growth
> opportunities in data deduplication, data protection and cloud-based services. Through
> strategic partnerships and cloud-based services we believe we will be able to accelerate the
> market awareness/acceptance of our solutions and produce long term shareholder value.

40.     On July 28, 2010, FalconStor issued a press release announcing its results for the

second quarter of 2010, the period ended June 30, 2010. For the quarter, the Company reported

revenues of $20.3 million and a GAAP net loss of $3.4 million, or $0.07 per share. Defendant Huai,

commenting on the results, stated, in pertinent part, as follows:

> We are pleased with the continuing ramp up of the sales of our branded solutions around the
> world. We expect the recently established strategic partnerships with top tier storage vendors
> to accelerate the sales of our data deduplication and replication solutions, and boost our
> brand recognition in the channel. Coupled with ongoing expense-control and operational
> discipline, we are expecting to continue to enhance our financial performance and to increase
> shareholder value.

41.     Then, on September 29, 2010, the Company issued a press release announcing that

Defendant Huai "resigned from all of his positions with the Company, effective immediately." The

press release stated that Defendant Huai "tendered his resignation following his disclosure that

certain improper payments were allegedly made in connection with the Company's contract with one

customer." The press release continued, in pertinent part, as follows:

> The Company has fully cooperated with law enforcement authorities with respect to the
> ongoing investigation, and it will continue to do so. In addition, a special committee of the
> Board has been formed to conduct a full internal investigation of these matters and the
> special committee has retained counsel to assist it in its investigation.

13

42.   In reaction to Defendant Huai's resignation and the revelation of improper payments to a certain customer, shares of the Company's stock fell $0.91 per share, or 22%, to close at $3.15 per share, on unusually heavy trading volume.

**Applicability of Presumption of Reliance:**
**Fraud-on-the-Market Doctrine**

43.   At all relevant times, the market for FalconStor common stock was an efficient market for the following reasons, among others:

(a)   FalconStor's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   During the class period, on average, over million shares of FalconStor stock were traded on a weekly basis, demonstrating a very active and broad market for FalconStor and permitting a very strong presumption of an efficient market;

(c)   FalconStor regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)   FalconStor was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(e)   Numerous NASD member firms were active market-makers in FalconStor stock at all times during the Class Period; and

14

(f)     Unexpected material news about FalconStor was rapidly reflected and incorporated into the Company's stock price during the Class Period.

44.     As a result of the foregoing, the market for FalconStor's common stock promptly digested current information regarding FalconStor from all publicly available sources and reflected such information in FalconStor's stock price.   Under these circumstances, all purchasers of FalconStor's common stock during the Class Period suffered similar injury through their purchase of FalconStor's common stock at artificially inflated prices, and a presumption of reliance applies.

## ECONOMIC LOSS/LOSS CAUSATION

45.     The market for FalconStor's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, FalconStor's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired FalconStor's common stock relying upon the integrity of the market price of FalconStor's securities and market information relating to FalconStor, and have been damaged thereby.

46.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of FalonStor's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

47.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the

15

damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about FalconStor's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of FalconStor and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

48.  As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding FalconStor, their control over, and/or receipt and/or modification of FalconStor's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning FalconStor, participated in the fraudulent scheme alleged herein.

16

49. Defendants were further motivated to engage in this course of conduct in order to allow the Individual Defendants and certain Company insiders to collectively sell 126,838 shares of their personally-held FalconStor common stock for gross proceeds of $545,048.

## NO SAFE HARBOR

50. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of FalconStor who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public,

17

including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase FalconStor's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for FalconStor's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of FalconStor as specified herein.

55.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of FalconStor's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about FalconStor and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and

18

engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of FalconStor's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing FalconStor's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and

19

omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of FalconStor's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of FalconStor's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired FalconStor securities during the Class Period at artificially high prices and were or will be damaged thereby.

59.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding FalconStor's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their FalconStor securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

60.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

62.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of FalconStor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

65.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66. As set forth above, FalconStor and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

67. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

68. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

22

Dated: October 8, 2010                    Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          Phillip Kim, Esq.  (PK 9384)
                                          Laurence Rosen, Esq. (LR 5733)
                                          350 Fifth Avenue, Suite 5508
                                          New York, NY  10118
                                          Phone: (212) 686-1060
                                          Fax: (212) 202-3827

                                          Counsel for Plaintiff

# CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against FalconStor Software, Inc. ("FALC"), its current and former officers, and others. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis not to exceed one-third of any recovery and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the U.S. District Court.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the complaint against FALC and certain of its officers and directors and I retain the Rosen Law Firm, P.A. as counsel in this action for all purposes.

2.      I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      The following is a list of all of the purchases and sales I have made in FALC securities during the Class Period set forth in the complaint. I have made no transactions during the class period in the securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 700 | 10-4-10 | $ 2.96 | | $ |
| 1700 | 8-24-10 | $ 3.29 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827

5.    I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6.    I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __4__ day of _____, 2010.

Signature: _Theresa M. Black_
Name: Theresa M. Black
Address:

REDACTED

Phone:
E-mail:

Item: 4 (continue from prior page if needed)

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM PA
350 FIFTH AVENUE, SUITE 5508
NEW YORK, NY   10118

2